**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**In the Matter of PAUL S. HUDSON,**

                      **Appellant.**

                                                      **1:10-CV-1352**
                                                         **(FJS)**

_____

**APPEARANCES**                                 **OF COUNSEL**

**EMERY, CELLI, BRINCKERHOFF &**     **RICHARD D. EMERY, ESQ.**
**ABADY, LLP**                           **DEBRA L. GREENBERGER, ESQ.**
75 Rockefeller Plaza
20th Floor
New York, New York 10019
Attorneys for Appellant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

       On September 18, 2007, Mr. Hudson filed a motion, *pro se*,[1] pursuant to 28 U.S.C. § 455(a) and (b) and Rule 5004(a) of the Federal Rules of Bankruptcy Procedure, seeking recusal of Judge Littlefield in *Washington 1993, Inc. v. Paul S. Hudson* (the "Adversary Proceeding"). In his motion, Mr. Hudson claimed that there existed an apparent bias on Judge Littlefield's part towards him due to, among other things, the court's alleged alteration of the complaint filed in the Adversary Proceeding.[2] On September 25, 2008, Judge Littlefield denied Mr. Hudson's recusal motion and further ordered Mr. Hudson to show cause why he should not be sanctioned

---

    [1] Although Mr. Hudson filed his motion on his own behalf, he is an attorney.

    [2] The Court notes that this was the **fourth** recusal motion that Mr. Hudson had filed seeking to have the bankruptcy court recuse itself. *See* Appendix ("App.") at 1166.

pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 105. On December 11, 2008, Judge Littlefield imposed sanctions on Mr. Hudson and ordered that he be referred to the New York State Committee on Professional Standards so that it might determine his fitness to practice law in New York State. On August 30, 2010, Judge Littlefield denied Mr. Hudson's motion for reconsideration of his order imposing sanctions.

Currently before the Court is Mr. Hudson's appeal from the bankruptcy court's decision to impose sanctions and to refer him to the disciplinary committee.

## II. BACKGROUND

In his recusal motion, Mr. Hudson indicated that, in reviewing the bankruptcy court's file in connection with an appeal to this Court, he discovered post-it notes on the Adversary Proceeding cover sheet and the complaint. The post-it note on the cover sheet reads, "5/1/00 added relief 727 per chambers direction." *See* Appendix ("App.") at 1040. The post-it note on the complaint reads, "added 727 relief for the complaint per chambers 5-01-00 CEB." *See id.* at 1042. Moreover, Mr. Hudson claimed that it was apparent that the complaint in the bankruptcy court's file was altered because a portion of the typeface of the "wherefore clause," namely "and on its fifth claim for relief for an order denying discharge to debtor," differs from the rest of the complaint and appears to be typewritten as opposed to printed from a computer like the balance of the pleading. *See id.* Mr. Hudson claimed that the bankruptcy court either made this alteration or directed someone to make it.

Mr. Hudson also noted that the bankruptcy docket contained two different entries for the complaint. The first corresponded to the original filing of the complaint with the Maryland

bankruptcy court and indicated that the relief sought was only pursuant to 11 U.S.C. § 523. The second entry indicated that the relief sought in the complaint was pursuant to 11 U.S.C. § 727 as well. The second entry was entered on the docket on May 1, 2000, but referenced the original filing date of February 10, 2000. As the second entry was made after the bar date for filing objections to discharge, *i.e.*, February 12, 2000, Mr. Hudson argued that the bankruptcy court's alleged *ex parte* alteration of the complaint could not be considered trivial.

On October 5, 2007, Mr. Siegal, counsel for the opposition, filed a letter with the bankruptcy court and attached a transcript of a proceeding held before Judge Derby of the Maryland bankruptcy court on March 10, 2000, at which the section 727 cause of action was specifically addressed. At that hearing, Judge Derby acknowledged that Mr. Hudson's discharge was entered in error and would be stricken because a section 727 cause of action was pending before the court. *See id.* at 1089, 1102-06. Judge Derby indicated that he spoke with the case administrator and the confusion seemed to arise over the language contained in the "wherefore clause" of the complaint. *See id.* at 1105-06. Specifically, Judge Derby pointed out that the prayer for relief did not specifically mention section 727 of the Bankruptcy Code with respect to the fifth cause of action, which is what the clerk looked at in classifying the complaint. *See id.* Judge Derby stated, however, that the fifth cause of action was a section 727 cause of action and indicated that he would be reclassifying the Adversary Proceeding to include the fact that it contained an objection to discharge in the fifth cause of action in the complaint. Prior to the docket being corrected pursuant to Judge Derby's instructions, the Adversary Proceeding and Mr. Hudson's bankruptcy case were transferred to the Northern District of New York.

On October 9, 2007, Mr. Hudson filed a reply affirmation. *See id.* at 1091-1100. Instead

of withdrawing his allegations in light of Mr. Siegal's letter and the attached hearing transcript, Mr. Hudson focused on the form of Mr. Siegal's letter and stated that

> [n]either Mr. Corvetti[3] [n]or Attorney Varley have filed any affidavits regarding their knowledge of the circumstances of the alteration of the complaint and there have been no submissions by any interested party refuting or denying the *prima facie* evidence that the original complaint was altered by the clerk on or about May 1st, 2000 at the direction of the chambers of Judge Littlefield, to add language to the prayer for relief clause requesting a denial of discharge based on 727. Nor has anyone refuted, denied or questioned that this was done without notice to the parties.

*See id.* at 1093. Moreover, Mr. Hudson acknowledged that he recalled that Judge Derby stated that the discharge had been issued in error but that he was unaware of Judge Derby's remarks discussing "reclassifying" the complaint to include an objection to discharge under section 727 as well as section 523. *See id.* at 1094. He further argued that Judge Derby's comments, however, "[did] not amount to an order or direction to amend the complaint to add language to the prayer for relief clause." *See id.*

At the October 10, 2007 hearing, Judge Littlefield addressed his concerns regarding Mr. Hudson's recusal motion. *See id.* at 1136-46. Specifically, Judge Littlefield discussed the fact that Mr. Hudson was in the Maryland bankruptcy court on the day that Judge Derby declared that Mr. Hudson was improperly given a discharge and further ordered that the docket should be corrected to reflect the fact that a section 727 opposition to discharge was timely filed. *See id.* at 1140-41. Mr. Hudson, however, made clear that he still believed that Judge Littlefield or his

---

[3] Mr. Corvetti filed the complaint in the Adversary Proceeding against Mr. Hudson. Mr. Varley was his attorney. Mr. Corvetti did not take a position regarding Mr. Hudson's recusal motion because this Court had ordered that Mr. Corvetti was no longer permitted to oppose Mr. Hudson in the discharge proceedings pursuant to language contained in the parties' settlement agreement.

chambers altered the original complaint to add language regarding section 727. *See id.* Judge Littlefield reserved decision.

On October 19, 2007, in light of the bankruptcy court's comments at oral argument, Mr. Hudson filed a supplemental reply affirmation. *See id.* at 1148-53. Specifically, Mr. Hudson stated that

> [p]aragraph 11 of my affirmation is accordingly hereby clarified by adding the underlined language and deleting the matter in brackets: "[While action by the clerk and Judge Littlefield's chambers was in my view highly improper in altering or amending the complaint,] the now revealed remarks of Judge Derby at a hearing in March 2000 explain and arguably avoid the appearance of bias by Judge Littlefield <u>as to adding 727 to the cover sheet to the complaint and as to adding a new entry on the docket for docket entry No. 1 on May 1st, 2000, noting 727 as grounds in addition to 523, but not as to the alteration of the complaint at the direction of chambers by adding a demand for denial of discharge to the complaint prayer for relief clause without notice to the parties or motion practice</u>. The other grounds for recusal stated in prior motions which were previously denied by this court have been resubmitted in this motion [however] remain, <u>as do possible ex parte activity by Mr. Corvetti or his attorneys in secretly seeking such alteration of the complaint after the bar date had passed</u>."

*See id.* at 1149-50. Mr. Hudson repeated that Judge Derby's remarks did not contemplate or justify the alteration of the original complaint and that "[t]his appears likely to have been an initiative of Judge Littlefield or his assistants and possibly as the result of *ex parte* contacts by Mr. Corvetti with court personnel." *See id.* at 1151.

On September 25, 2008, Judge Littlefield denied Mr. Hudson's recusal motion and further ordered Mr. Hudson to show cause why he should not be sanctioned pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 105. *See id.* at 1176. Regarding the alleged alterations to the complaint, Judge Littlefield held

> that the Complaint in the court's file, the copy of the complaint that
> **Hudson introduced** at the hearing before Judge Derby on March
> 10, 2000 as Exhibit 13, and the copy of the Complaint **Hudson
> included** in the record on appeal filed with the district court as part
> of Appendix 4 (N.D.N.Y. Case No. 2:01-CV-01474 No. 26,
> Related Court Proceedings in Maryland and New York) all contain
> the 'wherefore clause' with the dual font that was allegedly altered
> by the court.

*See id.* at 1169. Judge Littlefield concluded that, given the tactics that Mr. Hudson was willing to employ in attempts to have the court recuse itself from this matter, and given the baseless and unsupported criminal accusations made against the bankruptcy court, without any investigation, the imposition of sanctions pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure was appropriate. *See id.* at 1172.

On December 3, 2008, Mr. Hudson appeared before Judge Littlefield to show cause why he should not be sanctioned. First, Judge Littlefield commented on the fact that Mr. Hudson failed to investigate adequately his serious allegations against the court prior to filing his motion. *See id.* at 1272. Moreover, the court questioned Mr. Hudson about why he did not withdraw the first part of his motion and ask for additional time to perform discovery once Mr. Siegal filed his letter with the attached transcript from the Maryland bankruptcy court. *See id.* at 1272, 1274-75. Moreover, the court noted that, with due diligence, Mr. Hudson would have discovered that the complaint filed with the Maryland bankruptcy court contained the same different font as that filed with the Northern District of New York. Judge Littlefield concluded that Mr. Hudson should have conducted such an investigation before he accused the court of violating both federal and state laws. *See id.* at 1275-76.

On December 11, 2008, Judge Littlefield issued an order holding that Mr. Hudson had violated Rule 9011(b)(1) and (3) of the Federal Rules of Bankruptcy Procedure and referred him

to the Committee on Professional Standards for the Third Department. *See id.* at 1282-83. On August 30, 2010, the bankruptcy court denied Mr. Hudson's motion for reconsideration of its December 11, 2008 order imposing sanctions. *See id.* at 1294-1306.

### III. DISCUSSION

**A.    Standard of review**

This Court has jurisdiction to hear the instant appeal under 28 U.S.C. § 158(a). Rule 8013 of the Federal Rules of Bankruptcy Procedure, which sets forth the standard of review, provides that,

> [o]n an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed. R. Bankr. P. 8013. Thus, the district court must uphold the factual findings of a bankruptcy court unless they are "clearly erroneous." A district court may find a bankruptcy court's determination to be "clearly erroneous" when, on consideration of the record as a whole, the court "'is left with the definite and firm conviction that a mistake has been committed.'" *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 168 (2d Cir. 2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)) (other citation omitted). Although the bankruptcy court's findings of fact are not conclusive on appeal, "the party that seeks to overturn them bears a heavy burden." *H & C Dev. Group, Inc. v. Miner (In re Miner)*, 229 B.R. 561, 565 (B.A.P. 2d Cir. 1999) (citation omitted).

The bankruptcy court's legal conclusions, however, are subject to *de novo* review. *See Asbestosis Claimants v. U.S. Lines Reorganization Trust (In re U.S. Lines, Inc.)*, 318 F.3d 432, 435 (2d Cir. 2003). The court reviews mixed questions of law and fact "'either *de novo* or under the clearly erroneous standard depending on whether the question is predominantly legal or factual.'" *Bay Harbour Mgmt., L.C. v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings, Inc.*), 415 B.R. 77, 83 (S.D.N.Y. 2009) (quoting *Italian Colors Rest. v. Am. Express Travel Related Servs. Co.* (*In re Am. Express Merchants' Litig.*), 554 F.3d 300, 316 n.11 (2d Cir. 2009)).

**B.     Rule 9011**

Rule 9011(c) provides a mechanism for a court to impose sanctions against attorneys whom it finds to have violated Rule 9011(b)'s affirmative duty not to "fil[e], submit[ ], or later advocat[e]" a position set forth in a written document for an "improper purpose" or without "evidentiary support." Fed. R. Bankr. P. 9011(b).[4] Rule 9011, like its counterpart Rule 11 of the

---

[4] Specifically, the bankruptcy court found that Mr. Hudson violated Rule 9011(b)(1) and (3) of the Federal Rules of Bankruptcy Procedure. This Rule states, in pertinent part, that,

> [b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> * * * * * * * * * *
(continued...)

Federal Rules of Civil Procedure, plays an important role in maintaining the professionalism of the bar and the integrity of court processes.

Notice is an essential part of Rule 9011's operation. As the Second Circuit has observed, "[t]he 'notice' and 'reasonable opportunity to respond' requirements of Rule 9011(c) reflect the importance of according fair procedural protections to an attorney or other party facing sanction." *Klein v. Wilson, Elser, Moskowitz, Edelman & Dicker (In re Highgate Equities, Ltd.)*, 279 F.3d 148, 152 (2d Cir. 2002) (citation omitted). Accordingly, Rule 9011 provides an opportunity for an attorney to withdraw a filing that offends the rule through a safe harbor provision. This provision, which was added to Rule 9011 in 1997, like its counterpart added to Rule 11 in 1993, provides that a party may not file a motion for sanctions until twenty-one days after that party serves the motion on the other party, so that the other party has the opportunity to withdraw or amend the challenged paper. *See* Fed. R. Bankr. P. 9011(c)(1)(A); s*ee also* Fed. R. Civ. P. 11 advisory committee's note (1993).

Moreover, a court may initiate a motion asserting that a litigant has violated Rule 9011(b) by issuing an order to show cause. *See* Fed. R. Bankr. P. 9011(c)(1)(B). When the court initiates a Rule 9011 motion, the twenty-one-day safe harbor provision is not available to the party potentially subject to sanctions. *See* Fed. R. Bankr. P. 9011(c)(1)(A).

---

[4](...continued)

> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Bankr. P. 9011(b)(1) and (3).

In *In re Pennie & Edmonds LLP*, 323 F.3d 86, 91-92 (2d Cir. 2003), the Second Circuit considered the appropriate *mens rea* standard to sanction a party when the court initiates a sanction proceeding against an attorney.[5] Specifically, the court determined whether the "objectively unreasonable" standard should be applicable to all Rule 9011 proceedings, or only those in which the Rule's safe harbor provision is available. The court held that, in order to impose sanctions *sua sponte* upon an attorney, the district court must make a "finding of bad faith on the part of the attorney[.]" *Id.* at 90. The court reasoned that, as opposed to a sanctions proceeding that a party's motion initiates, "when a lawyer's submission . . . is subject to sanction by a court, the absence of a 'safe harbor' opportunity" for counsel to reconsider the challenged submission weighs in favor of "avoiding the inhibiting effect of an 'objectively unreasonable' standard[.]" *Id.* at 91. Thus, the court concluded that the "bad faith standard applies to a court-initiated show cause order issued where an opportunity for withdrawal or correction is unavailable." *Id.* at 91 n.4.

---

[5] Specifically, the court in *Pennie & Edmonds* addressed the "narrow issue concerning the applicable *mens rea* standard when a trial judge, *sua sponte*, initiates a post-trial Rule 11 sanction proceeding because a lawyer permitted a client to submit a false affidavit at an earlier stage of the litigation." *Pennie & Edmonds*, 323 F.3d at 87. Nevertheless, district courts in this circuit have consistently applied the *Pennie & Edmonds* standard to cases where, as here, the attorney personally submitted a false or misleading filing and the court, *sua sponte*, initiated a pre-trial Rule 11 sanction proceeding. *See, e.g.*, *TVT Records v. Island Def Jam Music Group*, 447 F. Supp. 2d 311, 314-15 (S.D.N.Y. 2006); *HD Brous & Co., Inc. v. Mrzyglocki*, No. 03 Civ. 8385, 2004 WL 1367451, *2 (S.D.N.Y. June 16, 2004) (holding that "[i]t could be argued that the present case, which concerns maintenance of contradictory claims, misleading use of authority, misrepresentations of fact by counsel, and maintaining of a frivolous petition, is not within the scope of *Pennie* . . . However, I decline to draw such a distinction in this case because I regard the Second Circuit's rationale [in *Pennie & Edmonds*] as sufficiently broad to cover both sets of circumstances" (internal quotation and footnote omitted)). Similarly, this Court finds that the Second Circuit's holding in *Pennie & Edmonds* is sufficiently broad to govern the sanction proceeding in the instant case.

As such, the Second Circuit has prescribed "two separate standards of culpability" under Rule 11, "depending upon who initiates sanction proceedings:" those that a party initiates are subject to an "objective unreasonableness" standard, and those that the court initiates are subject to "the heightened standard of 'subjective bad faith' established by the Second Circuit in *Pennie*." *HD Brous & Co., Inc. v. Mrzyglocki*, No. 03 Civ. 8385, 2004 WL 1367451, *1-*2 (S.D.N.Y. June 16, 2004).

Since the bankruptcy court initiated these proceedings *sua sponte*, the bankruptcy court properly determined that the subjective bad faith standard applied. *See* App. at 1303. As discussed below, the record supports a finding that Mr. Hudson made his representations in the recusal motion in bad faith.

Mr. Hudson argues that the evidence does not show that he filed his recusal motion with subjective bad faith and that the bankruptcy court improperly applied an objective standard in its decision imposing sanctions. *See* Dkt. No. 11 at 13-14. First, in the September 25, 2008 Memorandum-Decision and Order denying the recusal motion and ordering Mr. Hudson to show cause why he should not be sanctioned pursuant to Rule 9011, it is unclear what standard Judge Littlefield intended to apply at the forthcoming hearing. Specifically, Judge Littlefield stated that "[Mr.] Hudson knew or should have known that the factual recitations offered in support of his motion were simply false." *See* A-1174. In the show cause hearing, however, Judge Littlefield only twice stated that Mr. Hudson "knew or should have known" that his motion was baseless, *see* A-1269, and instead repeatedly made clear that the facts demonstrated that Mr. Hudson "had personal knowledge that both ends of that recusal request were absolutely baseless," *see id.* Moreover, the bankruptcy court discussed not only the fact that Mr. Hudson

-11-

"knew or should have known" that his claim was meritless when he filed it but also the fact that Mr. Hudson continued to pursue recusal even after evidence came to light that entirely disproved his outlandish claims against the court. *See id.* at 1272, 1274-76. Finally, the bankruptcy court noted that Mr. Hudson could have withdrawn his motion at any time, yet failed to do so, despite all of this evidence.

Additionally, the bankruptcy court discussed the fact that Mr. Hudson was present for the hearing before Judge Derby in 2000, at which it was discussed that his case was improperly docketed as not including a section 727 cause of action. As such, Mr. Hudson clearly had knowledge of the fact that his first, and likely second, grounds for recusal were meritless. Further, Mr. Hudson, an attorney, reviewed the complaint in the Adversary Proceeding when he filed it. Thereafter, this same complaint, with the alleged alteration, was filed as part of the record on appeal in this Court in 2001. He cannot now claim that he had no knowledge of what the complaint contained.

Also telling with regard to Mr. Hudson's subjective bad faith is the fact that, in his motion for reconsideration of the bankruptcy court's decision denying recusal and ordering Mr. Hudson to show cause, Mr. Hudson continued to argue that Mr. Corvetti had not denied that he had *ex parte* communications regarding the alleged alteration of the complaint with the clerk, case manager, or chambers as theorized in the recusal motion. *See* App. at 1183. Even after all of this evidence came to light refuting his outlandish claims, Mr. Hudson continued to argue that someone tampered with the complaint and that Mr. Corvetti and Mr. Varley had a duty to come

-12-

forward in the interests of justice to advise the court regarding the veracity of this claim.[6]

---

[6] Specifically, Mr. Hudson argued that

> [t]he court in its decision of 9/25/08 at page 9 faulted the debtor movant for criticizing the Corvetti attorney letter filing while recognizing the filing of Corvetti Attorney David Siegal in the interest of justice as an officer of the court. However, the fact remains that Attorney Varley who signed the complaint in February 2000 and Richard Corvetti with a near certainty had personal knowledge that the complaint had not been altered (they had only to look in their case files) but did not provide that information to the court and instead sent a new attorney who had no personal knowledge to file a notice of appearance and an accusatory statement of bad faith and intentional wrongdoing against the debtor[.]
>
> Attorney Varley, as an officer of the court had a duty to come forward in the interests of the administration of justice and the integrity of the judicial process to advise the court that notwithstanding circumstantial evidence to the contrary, the complaint had not been altered since it had been filed with the court. . . . Accordingly, it was not improper for this debtor movant to seek a negative inference based on the missing witness rule principle, when Mr. Corvetti and his two attorneys failed to appear at the recusal motion hearing without explanation or excuse. . . .

*See* App. at 1183-84.

Mr. Hudson's argument is misleading for several reasons. First, Mr. Hudson faults Mr. Corvetti and Mr. Varley for not coming forward with information from their case file to disprove his claim that the bankruptcy court altered the complaint; however, Mr. Hudson and his attorney were provided with the same complaint when it was filed in 2000. As such, Mr. Hudson simply needed to "look in [his] case files" to realize that he was falsely accusing the court of criminal conduct. Second, when Mr. Varley's associate, Mr. Siegal, came forward with the hearing transcript to disprove Mr. Hudson's claim regarding a different portion of his recusal motion, Mr. Hudson argued that the "letter is also in violation of Judge Scullin's order from its third paragraph on, in that it argues against the very motion that it previously states and admits that Mr. Corvetti and Washington 1993, Inc. are prohibited from so doing by Judge Scullin's decision and order of July 9th, 2007." *See id.* at 1097. After Mr. Corvetti, through Mr. Siegal, fulfilled his duty to the court to inform it that false allegations had been raised in a motion, Mr. Hudson accused them of violating this Court's order.

-13-

Clearly, the bankruptcy court did not err in finding that Mr. Hudson filed, or at the very least continued to advocate in support of, his recusal motion after he knew that his allegations were entirely meritless.

Such outrageous assertions against the bankruptcy court, with absolutely no proof that the court actually engaged in the alleged misconduct, clearly demonstrate that Mr. Hudson had an improper motive for filing this fourth recusal motion. Alternatively, even assuming that Mr. Hudson did not file the recusal motion in bad faith, it is clear that, by continuing to advocate in support of the motion after evidence came to light which disproved his theories, Mr. Hudson violated Rule 9011, which not only prohibits the filing of meritless claims or false documents but also prohibits attorneys from "later advocating . . . a petition, pleading, written motion, or other paper . . . " which the attorney knows to be false or meritless.

Based on the foregoing, the Court affirms the bankruptcy court's decision imposing sanctions pursuant to Rule 9011 and referring Mr. Hudson to the New York State Committee on Professional Standards.

## C.    Appropriate sanction

Mr. Hudson also argues that, if the Court affirms the bankruptcy court's findings, referral was an inappropriate sanction because sanctions under Rule 9011 are "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." *See* Dkt. No. 11 at 25.

Rule 9011 provides that

> [a] sanction imposed for violation of this rule shall be limited to
> what is sufficient to deter repetition of such conduct or comparable

> conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

*See* Fed. R. Bankr. P. 9011(c)(2). "In determining what sanctions to apply, the Court must keep in mind Bankruptcy Rule 9011's central goal of deterrence." *In re Hill*, 377 B.R. 8, 22 (Bankr. D. Conn. 2007) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 392, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990)). "The sanction imposed must send a clear message that 'the violator's behavior will not be tolerated and must stop.'" *Id.* (quotation omitted).

In the bankruptcy court's order denying Mr. Hudson's motion for reconsideration, the court noted that "Canon 3(B)(5) of the Code of Conduct for United States Judges provides that '[a] judge should take appropriate action upon learning of reliable evidence indicating the likelihood that . . . a lawyer violated applicable rules of professional conduct.'" *See* App. at 1305. The bankruptcy court then stated its belief that Mr. Hudson's conduct "may have" violated the New York State Rules of Professional Conduct which prohibit an attorney from "'[e]ngag[ing] in conduct that is prejudicial to the administration of justice,'" or "'[e]ngag[ing] in any other conduct that adversely reflects on the lawyer's fitness as a lawyer.'" *See id.* (quotations omitted). Although the court made no specific finding of misconduct nor did it recommend what the Committee on Professional Standards should do, it stated that referral was appropriate so that the Committee could further investigate and take whatever action it might deem appropriate. *See id.* at 1306.

Based on the foregoing, the Court affirms the bankruptcy court's decision to refer Mr.

Hudson to the New York State Committee on Professional Standards.  The bankruptcy court correctly determined that a monetary sanction was inappropriate in this situation and that referral was sufficient to deter this behavior in the future without being overly punitive.[7]

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the bankruptcy court's decision to impose sanctions and to refer Mr. Hudson to the New York State Committee on Professional Standards for the Third Department is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: March 10, 2011
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[7] The Court notes that the appropriateness of this sanction finds further support in Mr. Hudson's behavior in the Adversary Proceeding, which led to the court denying him a discharge from bankruptcy.